UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

NOT FOR PUBLICATION

MICHAEL MERKLE,

        Plaintiff,

v.                                                                 Civ. Action No. 07-3401 (KSH)

T-MOBILE USA, INC.,

        Defendant                                          **Opinion**

**KATHARINE S. HAYDEN, U.S.D.J.**

Plaintiff Michael Merkle ("Merkle") has sued his former employer, T-Mobile USA, Inc. ("T-Mobile"), alleging his termination breached his implied employment contract with the company and violated public policy. T-Mobile moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (D.E. 12.)

**BACKGROUND**

All factual allegations are taken from the amended complaint of August 10, 2007. (D.E. 9.) The Court will consider references to the T-Mobile employee handbook ("handbook"), attached as Ex. A to T-Mobile's moving brief (D.E. 12), without converting the motion to one for summary judgment because the document is "internal to or explicitly relied upon in the complaint." In re Rockefeller Ctr. Props. Sec. Litig., 184 F.3d 280, 287 (3d Cir. 1999) (internal quotations and emphasis omitted). See also Lum v. Bank of Am., 361 F.3d 217, 222 n.3 (3d Cir. 2004)("In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.").

Merkle worked for T-Mobile for 11 years beginning on July 15, 1996. (¶ 53.) He served as regional sales director for the New York metro area in 2004 and was scheduled to become the

director of accounts, northeast division, on April 1, 2007.  (¶ 54.)  He claims he was recognized for his sales performance, performed his job duties in "an exemplary and satisfactory manner, received positive annual written employment reviews, was never disciplined for any misconduct, and never received any warnings or progressive discipline, verbal or written, concerning his performance on the job or his conduct at the workplace or at workplace-sponsored events." (¶ 53.)

On February 15 and 16, 2007, he attended an annual conference for T-Mobile employees at the Mineral Ski Resort and Spa in Vernon, New Jersey.  (¶ 11.)  Approximately 100 employees attended, among them T-Mobile executive officers and Merkle's supervisors.  (¶ 11.)  At the conference, T-Mobile hosted a social event that "included an open bar with cocktails served throughout the evening." (¶ 12.)  Merkle claims that he consumed alcohol in moderation at the event and that his fellow workers will testify that he moderated his alcohol consumption and used good judgment. (¶¶ 15, 16.)

One month later, Merkle was called to a meeting with Anna Carlson, senior human resources manager, and Terrence Hayes, the regional vice president for the east division.  (¶ 18.)  At this March 16, 2007 meeting, he claims Carlson and Hayes told him he was seen drunk at the February conference.  (¶ 18.)  Merkle claims this was the first time he heard about any comments related to his behavior at the conference.  (¶ 18.)  He told Carlson and Hayes that he consumed alcohol in moderation, was at no point intoxicated, and did not do anything that could be seen as a detriment to the company.  Nevertheless, Carlson and Hayes told Merkle that he was being fired "for cause".  (¶ 22.)

Merkle denies that he was drunk at the event.  (¶ 23.)  He claims that a former sales manager, who blamed Merkle for his own termination, told T-Mobile during his exit interview that Merkle was drunk at the conference.  (¶ 25.)  Merkle offers two text messages the former employee sent to him, the day after he was fired, as evidence of ill motives.  One message reads, "Hey, Karma is a bitch.  Watch the next time you screw with someone"; and the other is, "Hey Pal. What comes

around goes around. Watch who you stab in the back next time." (¶ 25.) Merkle claims the company never questioned this former employee about his allegations. (¶ 26.) He also claims that he was fired as a pretext to avoid paying him a severance package being offered to several employees during a period of substantial layoffs. (¶ 24, 27-28.)

Merkle sued in state court, and T-Mobile removed based on diversity jurisdiction. (D.E. 1.) He filed an amended complaint on August 10, 2007 (D.E. 9), alleging (1) T-Mobile breached an implied contract of employment by failing to conduct an internal investigation and use progressive discipline as required by policies contained in the company handbook (Count 1); (2) T-Mobile breached an unwritten, company-wide policy, procedure and practice of using progressive discipline before terminating an employee (Count 2); and (3) T-Mobile wrongfully terminated Merkle in violation of public policy (Count 3). T-Mobile now files the instant motion to dismiss, claiming Merkle fails to state a claim upon which relief can be granted. (D.E. 12.)

## STANDARD

Rule 12(b)(6) permits a court to dismiss a complaint for "failure of the pleading to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering the motion, the court is "required to accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). "The inquiry is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims." In re Rockefeller Ctr. Props., Inc. Sec. Litig., 311 F.3d 198, 215 (3d Cr. 2002). Based upon the Supreme Court's decision in Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007), it is no longer good law to frame the analysis that a motion to dismiss succeeds only if it appears to a certainty that no relief could be granted under any set of facts which could be proved. Id. at 1969 (". . . after puzzling the profession for 50 years, this famous observation has earned its retirement."). In Phillips v. County of Allegheny, 515 F.3d 224

(3d Cir. 2008), the Third Circuit held that Twombly applies to all cases, not just antitrust actions, and articulated the Twombly standard as follows:

> stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.

Id. at 234 (internal quotations and citations omitted).

## **DISCUSSION**

T-Mobile argues that Merkle has not alleged sufficient facts to show it created a binding implied contract of employment based on either a company-wide oral policy or language in the employee handbook. (Def. Br. 7-20.) It also argues that Merkle's public policy claim is a rehash of his implied contract claims as he provides no clear public policy that T-Mobile violated in firing him. (Def. Br. 20-22.) Merkle argues that T-Mobile's motion contains "predictable and cookie-cutter arguments." (Pl. Br. 1.) He contends that he has alleged sufficient facts to show T-Mobile had a binding policy of supervisors investigating allegations of misconduct and employing progressive discipline before termination, which he argues is based upon both an oral policy and the language of the handbook. (Pl. Br. 1.)

"In New Jersey, an employer may fire an employee for good reason, bad reason, or no reason at all under the employment-at-will doctrine. An employment relationship remains terminable at the will of either an employer or employee, unless an agreement exists that provides otherwise." Witkowski v. Thomas J. Lipton Inc., 136 N.J. 385, 397 (1994) (internal citations omitted). Such an agreement "providing otherwise" may be based upon language in an employee handbook, or on an oral promise. See Woolley v. Hoffmann-La Roche, 99 N.J. 284, 285-86 (1985); Reynolds v. Palnut Co., 330 N.J. Super. 162, 171 (App. Div. 2000). But an employer can disclaim such language or policies that imply a contractual obligation by placing a clear, prominent disclaimer in its employee handbook. Witkowski, 136 N.J. at 400.

Whether employed on an at-will basis or not, an employee cannot be terminated for reasons that violate a clear public policy. See Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58, 72 (1980)("an employee has a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy. The sources of public policy include legislation; administrative rules, regulations or decisions; and judicial decisions.").

A. **Oral implied contract claim**

To establish there was an implied oral contract that progressive discipline would be imposed before termination for violating T-Mobile's alcohol policy, Merkle must show (1) there was a "pervasive and company wide" policy; (2) the "pronouncements were an accurate representation of policy"; (3) the "pronouncements were authorized to be made"; and (4) the "employees had a reasonable expectation that the policy would apply to them." Reynolds, 330 N.J. Super. at 171 (citing Gilbert v. Durand Glass Mfg. Co., 258 N.J. Super. 320, 331 (App. Div. 1992)).

Merkle alleges that T-Mobile "has a practice if not an unwritten policy of giving progressive discipline, i.e. verbal and/or written warnings, to employees prior to their termination of employment." (¶ 42.) He claims he has "first-hand knowledge of the policy and practice of providing employees with prior warning and discipline, either verbal and/or written, before the Company makes a decision to terminate an employee." (¶ 43.) He also claims that as a former supervisor he was "authorized to provide and did engage in providing such warnings to employees prior to termination on numerous occasions." (¶ 44.) He lists several employees that received progressive discipline from him or from other supervisors. (¶ 45-46, 72-76.) These incidents included events where the employees engaged in activity that was allegedly in violation of the alcohol policy. (¶¶ 73-74.) For example, Merkle claims that at a company sponsored event a former manager consumed alcohol and "punched a subordinate in the face shattering the glass in the subordinate's face," but only received a warning from the T-Mobile. (¶ 73.)

T-Mobile claims that corporate culture alone is insufficient to create an implied contract of employment, relying on Judge Lechner's decision in Pitak v. Bell Atlantic Network Services, 928 F. Supp. 1354, 1370 (D.N.J. 1996), for that proposition.  (Def. Br. 17-20.)  Pitak involved the issue of whether there were promises of a lifetime employment based on a corporate culture of not terminating employees.  Id. at 1370.  The court held that "New Jersey law demands specific, concrete evidence of a contract for lifetime employment, and neither 'corporate culture' nor the assurances of relocation in the instant case are sufficient to demonstrate such contracts."  Id. Similarly, in Normand v. Goodyear Tire & Rubber Co., No. 05-1880, 2005 U.S. Dist. LEXIS 24487 (D.N.J. July 13, 2005), Judge Pisano concluded that "'corporate culture' cannot convert the at-will employment relationship into something more."  Id. at *19.  There, the plaintiff alleged that Goodyear created an implied contract by "consistent enforcement of similar disciplinary and/or employment problems."  Id. (internal quotations omitted).  The court dismissed plaintiff's claims that "Goodyear's consistent enforcement of disciplinary procedures to other employees created an implied contract."  Id. at *19-20.

It appears that Merkle has done more than plead "corporate culture" in an effort to convert an at-will employment relationship "into something more."  He has alleged personal knowledge of the policy of progressive discipline, and claims he had to enforce it as a supervisor.  He listed several employees who were subject to the progressive discipline policy, including some who violated the company's rules on alcohol use.  He also provides allegations concerning enforcement of the policy by other supervisors.  These specific factual allegations support the claim that there was a company-wide policy implemented in cases similar to Merkle's.  As such, the complaint pleads claims that are distinguishable from the generic "corporate culture claims" found insufficient in Pitak and Normand, which, significantly, were decided on summary judgment.  Dismissal of the claim in Count 2 is premature.

    B.  **Handbook claim**

T-Mobile argues that Merkle's handbook claim in Count 1 must be dismissed because he does not cite to definite and comprehensive language that could create a reasonable expectation of a policy of investigating employee misconduct and using progressive discipline upon which an employee could rely. Merkle points to the sections in the handbook entitled:

**<u>Alcohol In The Workplace</u>**

**Alcohol Use**

There are some limited circumstances where alcohol use may be acceptable in a work-related context (see Business Travel and Company-Sponsored Events sections below). Otherwise, this policy establishes a general rule prohibiting alcohol use, or being under the influence of alcohol, in all work-related contexts. "Alcohol" is defined as beer, wine, distilled spirits or other beverages containing ethyl alcohol.

T-Mobile prohibits employees from manufacturing, selling, transporting or being under the influence of alcohol during their shift, whether the work time is scheduled or unscheduled. Therefore, without limitation, employees are prohibited from reporting to work or doing Company business, including operating any vehicles or machinery, while under the influence of alcohol.

. . .

**Company-Sponsored Events**

Reasonable and limited amounts of alcohol may be consumed at Company-sponsored events, such as holiday parties, launch events or business meals by individuals over the legal drinking age of the state where the event is taking place, only when the Company has given prior authorization to do so.

In every situation, each employee must exercise good judgment to regulate his or her own and his or her guest's personal consumption. An employee's level of alcohol consumption at Company-sponsored events must not impair his or her ability to interact appropriately with others and must not result in the employee driving while intoxicated. If the employee or guest has any doubt about whether his or her blood alcohol level is within the legal limit after a Company-sponsored event, or whether he or she can drive safely, the employee or guest should refrain from driving and seek alternative transportation. Company-paid cab fare is available in such situations. Individuals who consume alcohol at Company-sponsored events agree to indemnify the Company from any liability caused by their consumption.

(Handbook 35.) Additionally, Merkle points to the section entitled:

**<u>Internal Investigations</u>**

> As appropriate, T-Mobile will investigate complaints of harassment, discrimination, or retaliation in the workplace or complaints alleging noncompliance with policies or legal requirements. The Company may also investigate suspected employee misconduct, threats of violence or unsafe conduct and allegations of other improper activity.
>
> Employees must fully cooperate in internal investigations, including providing complete, truthful, and accurate information and written statements upon request. An employee's refusal to cooperate in any investigation may result in disciplinary action, up to and including termination of employment. To ensure the integrity of investigations, employees must maintain the confidentiality of the names of employees involved in the investigation, whether as complainants, subjects or witnesses. Conduct that interferes with, undermines, impedes or is otherwise detrimental to any internal investigation is prohibited and may result in disciplinary action up to, and including, termination of employment.

(Handbook 41.) Merkle contends that these provisions, read together, create an implied contract that required T-Mobile to conduct an investigation and employ progressive discipline before terminating him. He notes that in "Internal Investigations," the handbook specifies that "T-Mobile will investigate . . . noncompliance with policies or legal requirements." (Handbook 41.) He reasons that since he was accused of violating the Alcohol policy, T-Mobile was required to conduct an investigation of the allegations before his termination. He argues that since he was never informed of an investigation and was immediately terminated (¶¶ 39-40), T-Mobile failed to follow the contractual obligations provided by the handbook.

The New Jersey Supreme Court has held "absent a clear and prominent disclaimer, an implied promise contained in an employment manual that an employee will be fired only for cause may be enforceable against an employer even when the employment is for an indefinite term and would otherwise be terminable at will." Woolley, 99 N.J. at 285-86.

> [T]he basic test for determining whether a contract of employment can be implied turns on the reasonable expectations of employees. A number of factors bear on whether an employee may reasonably understand that an employment manual is intended to provide enforceable employment obligations, including the definiteness and comprehensiveness of the termination policy and the context of the manual's preparation and distribution.

Witkowski, 136 N.J. at 393.  The Court only has before it the language in the handbook and Merkle's allegations, which if true, would support his claim that employees reasonably expected that T-Mobile was required to investigate noncompliance with its policies and impose a progressive form of discipline consistent with the handbook text that noncompliant employees would receive "disciplinary action, up to and including termination."  (Handbook 41.)  Moreover, the cases cited by defendant regarding handbook language were decided on summary judgment with the benefit of a more fully developed factual record.  Normand, 2005 U.S. Dist. LEXIS 24487 (converting motion to dismiss to one for summary judgment because "matters outside the pleadings" were considered by the court); Maietta v. United Parcel Serv., 749 F. Supp. 1344, 1348 n.2 (D.N.J. 1990)(Lechner, J.)(citing extensive factual record used in deciding summary judgment motion); Nicosia v. Wakefern Food Corp., 136 N.J. 401, 405 (1994)(jury trial); Witkowski, 136 N.J. at 389 (summary judgment); Woolley, 99 N.J. at 287 (summary judgment).

      T-Mobile also argues that, even if there is language that creates an implied contract, there are sufficient disclaimers contained in the handbook that negate an employee's reasonable expectation that the language is binding.  (Def. Br. 14.)  "An effective disclaimer by the employer may overcome the implication that its employment manual constitutes an enforceable contract of employment."  Nicosia, 136 N.J. at 412.  A disclaimer must contain an "appropriate statement" in a "very prominent" place and be construed "in accordance with the reasonable expectations of the employees."  Id. at 413 (internal quotations omitted).  An appropriate statement makes clear that the employment relationship is still at will and that the employer has the power to fire anyone with or without cause.  Id. at 414.  To meet the prominence requirement, the disclaimer's text must be "set off in such a way as to bring the disclaimer to the attention of the reader."  Id. at 415.  The Nicosia court described how this requirement can be met.

> Basically, a disclaimer must be separated from or set off in a way to attract attention. For example, a term or clause is conspicuous when it is so written that a

> reasonable person against whom it is to operate ought to have noticed it. A reader's attention may be called by setting off the disclaimer with different type, including bold, capitals, or italics. A disclaimer may be underlined or set off by a different color or border.

<u>Id.</u> (internal quotations and citations omitted.) Above all, an "effective disclaimer must be expressed in language such that no one could reasonably have thought [the manual] was intended to create legally binding obligations." <u>Id.</u> at 413 (internal quotations and citations omitted).

T-Mobile cites to four disclaimers in the handbook, contained on pages 3, 5, 7 and 9 of the handbook, to support its claim. (<u>See</u> Def. Br. Ex. A.) The first disclaimer, near the middle of page 3 in bold font, states:

> **Employment by T-Mobile is "at will," which means that it is not for any specific duration, and that you or the Company may terminate the employment relationship at any time with or without notice, reason, or cause. Nothing in this Handbook is a promise of specific treatment in any specific situation, is intended to, or does create a contract, either express or implied, between you and the Company, including any contract of continued employment. No one except the Chairperson, President, or Chief Executive Office of T-Mobile has the authority to change your at will employment status, or to make any agreement that you will be employed by the Company for any set period of time, or to make any other promises or commitments that are contrary to the Company's policy of at will employment. Further, for any such agreement, promise or commitment to be binding on the Company, and to be valid and enforceable against it, that agreement, promise, or commitment must be part of a formal written contract signed by you and the Chairperson, President, or Chief Executive Officer of T-Mobile and, if applicable, approved by the Compensation Committee.**

(Handbook 3 (emphasis in original).) The second disclaimer appears on the "Employee Acknowledgement" form on the upper half of page 5 in regular font, and states:

- My employment is at will to the fullest extent allowed by law and may be terminated by the Company or me at any time, with or without notice, reason, or cause.

(Handbook 5.) The third disclaimer, in the "Getting Started" section at the top of page 7 in regular font, reads:

<u>**At Will Employment**</u>

> Employment by T-Mobile is "at will," which means that is not for any specific duration, and that an employee or the Company may terminate the employment relationship at any time with or without notice, reason or cause.  No one except the Chairperson, President or Chief Executive Officer of T-Mobile has the authority to change any employee's at will employment status, or to make any agreement that an employee will be employed by T-Mobile for any set period of time, or to make any other promises or commitments that are contrary to this policy of at will employment.  For any such agreement, promise or commitment to be binding on the Company, and to be valid and enforceable against it, that agreement, promise, or commitment must be part of a formal written contract signed by an employee and the Chairperson, President or Chief Executive Officer of T-Mobile and, if applicable, have the approval of the Compensation Committee.

(Handbook 7.)  The fourth disclaimer is on page 9 near the middle of the page in regular font.

> None of T-Mobile's policies, practices or procedures creates or is intended to create any contract, either express or implied, between you and the Company, including a contract of continued employment.  Similarly, no policy, practice or procedure is a promise to you of specific treatment in any specific situation, or of employment on any basis besides at will employment.

(Handbook 9.)   T-Mobile argues that "an employee cannot turn the page without bumping into another provision informing him or her of the fact employment with T-Mobile may be terminated 'without notice, reason, or cause.'"  (Def. Reply. Br. 7-8.)  It claims these disclaimers are clear and prominent and therefore no implied contract is created.

Merkle argues the disclaimers are "inconspicuously and inappropriately scattered throughout the Handbook."  (Pl. Br. 19.)  He argues the disclaimer:

> is hidden in paragraph 3 of the Employee Handbook Purpose on page 3, is alluded to in parts of the Employee Acknowledgement found on page 5, is generally mentioned in "T-Mobile Company Policies and Procedures" found on page 9, and listed as one of several other Company policies set forth on page 7 under the "Getting Started" policy.

(Pl. Br. 19-20.)   He also argues that the disclaimers on page 3 and 5 do not contain bold or conspicuous font and are not stand alone provisions on their own separate page.  (Pl. Br. 20.)  He claims the disclaimers lack the appropriate language and prominence to adequately waive any contractual rights created by the handbook.

The <u>Nicosia</u> court noted that "when the facts surrounding the content and placement of a disclaimer are themselves clear and uncontroverted . . . the effectiveness of a disclaimer can be resolved by the court as a question of law." <u>Id.</u> at 416.  But, "[i]n some cases . . . just as a jury determines whether an employment manual gives rise to an implied contract, so too may a jury need to decide whether the content of a disclaimer is effective." <u>Id.</u>  Here, the disclaimers on page 5 and 9 are mixed in with other policies and statements.  The disclaimer on page 3 is in bold but it is on a page containing other bold sections and is located near the middle of the page.  The disclaimer at the top of page 7 is in regular font.  T-Mobile relies on cases in which the disclaimers were arguably more dramatically set off.  In <u>Theodossiou v. Commerce Bank, N.A.</u>, No. 06-4137, 2007 U.S. Dist. LEXIS 26029, *7-9 (D.N.J. Apr. 5, 2007)(Irenas, J.), the court found sufficient a disclaimer that was a full page near the front of the handbook, in bold lettering surrounded by a bold border, and with a heading "AT WILL STATEMENT IMPORTANT NOTICE" in capital letters.  <u>Id.</u> at *7-9.  <u>See also</u> <u>Mardini v. Viking Freight, Inc.</u>, 92 F. Supp. 2d 378, 383 (D.N.J. 1999)(Bissell, J.)(dismissing complaint where handbook disclaimer was "set out on a separate page on the first page of the text of the manual).  The Court cannot say, as a matter of law, that the disclaimers are sufficiently set apart from the rest of the handbook language on the basis of this record alone.  Because the Court finds sufficient facts to support Merkle's handbook claim, dismissal of Count 1 is premature.

**C. <u>Public policy claim</u>**

Merkle relies upon the public policy exception to the at-will doctrine in Count 3.  In <u>Pierce</u>, the New Jersey Supreme Court recognized a cause of action for any employee whose termination violated "a clear mandate of public policy."  84 N.J. at 72.  T-Mobile argues that Merkle has not alleged a clear mandate.  <u>Pierce</u> indicates "[t]he sources of public policy include legislation; administrative rules, regulations or decisions; and judicial decisions." <u>Id.</u>  The Court has carefully reviewed Count 3 of the complaint and plaintiff's arguments in support of preserving the claim.  The Court notes that the factual allegations, describing specific events where T-Mobile condoned the

use of alcohol, lends support to the claims of the existence of an oral contract and an implied contract based on the handbook language insofar as the company-sponsored events where alcohol was consumed were part of the employee experience, and, arguably, gave rise to a company policy prohibiting excessive alcohol use and how incidents should be responded to.  (See ¶¶ 82, 83, 86, 87.)  But the Court does not find the same allegations establish a "clear mandate of public policy" claim.  At best, Count 3 alleges mixed messages and the use of polices and procedures as a sword and a shield.  If true, such conduct does not establish a public policy being violated, nor has plaintiff demonstrated any nexus between such conduct and "legislation; administrative rules, regulations or decisions; and judicial decisions."  Id.  The Court will dismiss Merkle's public policy claim.

## CONCLUSION

For the foregoing reasons, T-Mobile's motion to dismiss the complaint (D.E. 12) is **granted** as to Count 3, and **denied** as to Counts 1 and 2.  An appropriate order will be entered.

Dated:  July 31, 2008                                              /s/Katharine S. Hayden
                                                                          Katharine S. Hayden
                                                                          United States District Judge